## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA
## NEW ALBANY DIVISION

| | |
|---|---|
| In re: <br><br> KENTUCKIANA MEDICAL CENTER, LLC, <br><br> Debtor. | Chapter 7 <br><br> Case No. 19-90617-AKM-7 |

### TRUSTEE'S MOTION TO COMPROMISE AND
### SETTLE CERTAIN CLAIMS RELATED TO THE LENNAR ENTITIES

Kathryn L. Pry, the chapter 7 trustee in this case (the "Trustee"), by counsel, requests entry of an order, pursuant to 11 U.S.C. §§ 105 and 363 and Rule 9019 of the Federal Rules of Bankruptcy Procedure, authorizing the Trustee to compromise and settle certain claims related to RL BB Financial, LLC ("Financial"), RL BB-IN KRE, LLC ("RL BB-IN KRE"), Rannel Holdings, LLC (f/k/a Rialto Holdings, LLC) ("Holdings") and KMC Real Estate Investors, LLC ("KMCREI," and together with Financial, RL BB-IN KRE and Holdings, and their direct and indirect parents, subsidiaries and/or affiliated entities, predecessors, successors and assigns, the "Lennar Entities") on the following grounds:

### I. JURISDICTION

1.      The Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory predicates for relief are sections 105 and 363 of Title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## II. BACKGROUND

### A. The Involuntary Filing and Order for Relief.

4.     On April 23, 2019, Jeffrey A. Campbell MD, Physicians Primary Care, LLC, Eli Hallal MD and Renato LaRocca MD (together, the "Petitioning Creditors") filed an involuntary petition under chapter 7 of the Bankruptcy Code against Kentuckiana Medical Center, LLC (the "Debtor").

5.     On May 9, 2019, pursuant to the *Order Granting Emergency Motion of Petitioning Creditors Under 11 U.S.C. §§ 105(a) and 303(g) for Order Directing Appointment of Interim Trustee* [Doc 17] and the *Appointment of Trustee* [Doc 18], the Trustee was appointed as the interim trustee in this case, pursuant to section 303(g) of the Bankruptcy Code, over the Debtor's accounts receivables and causes of action.

6.     On May 23, 2019, pursuant to the *Order for Relief in an Involuntary Case and Order to Complete Filing* (the "Order for Relief") [Doc 29] and with the consent of the Debtor, the Court granted the Petitioning Creditors' request for an order for relief under chapter 7 of the Bankruptcy Code and the Trustee was appointed the interim trustee in this case over all assets of the Debtor's bankruptcy estate pursuant to section 701(a)(1) of the Bankruptcy Code.  In accordance with section 702(d) of the Bankruptcy Code the Trustee became the permanent case trustee on July 29, 2019 following the conclusion of the meeting of creditors held pursuant to section 341(a) of the Bankruptcy Code.

### B. Prior Chapter 11 Filings and Events Leading Up to the Filing of this Case.

7.     In 2007, 29 doctors (including the Petitioning Creditors) formed the Debtor and KMCREI to develop, own and operate a small hospital in Clarksville, Indiana.  KMCREI owned the real estate commonly known as 4601 Medical Plaza Way, Clarksville, Indiana 47129, which

was the location of the hospital leased and operated by the Debtor (the "Hospital").  The Hospital was not completed and was a financial failure, forcing the Debtor and KMCREI to file chapter 11 cases in 2010 and 2011, respectively.

8.     In 2010, prior to the filing of KMCREI's chapter 11 case, the original construction lender assigned its $21.5 million mortgage loan to Financial.  Although Financial was originally adverse to KMCREI and the Debtor, even obtaining stay relief to foreclose on the Hospital and opposing KMCREI's original cram down plan, Financial ultimately sponsored new consensual Chapter 11 plans for KMCREI and the Debtor after the original plan sponsor balked and withdrew its commitment to fund the plans.  *See generally, In re Kentuckiana Medical Center, LLC*, 531 B.R. 758 (S.D. Ind. 2015).

9.     The chapter 11 plans of reorganization for the Debtor and KMCREI were confirmed in 2013, pursuant to which Financial restructured its mortgage on the Hospital and, with its affiliates, provided over $10 million in exit financing to the Debtor and KMCREI in exchange for acquiring the equity interests in such entities.

10.    After the confirmation of the chapter 11 plans, the Debtor leased the Hospital from KMCREI pursuant to a Lease Agreement dated November 1, 2013 (the "KMC Lease").  The KMC Lease was terminated on February 18, 2019 due to the Debtor's failure to pay rent due and owing under the KMC Lease.  On November 12, 2019, KMCREI filed Proof of Claim No. 46 in this case, asserting a general unsecured claim against the Debtor for unpaid rents in connection with the KMC Lease in the amount of $17,482,250.90 (the "KMCREI POC").

11.    Subsequent to confirmation of the Debtor and KMCREI plans, and over the next six years, RL BB-IN KRE advanced tens of millions to the Debtor to complete the Hospital building, purchase equipment, pay vendors and cover operating shortfalls.  Notwithstanding

3

these efforts, the Hospital remained unprofitable and the decision was made to close the Hospital in the spring of 2019.  An orderly wind-down and liquidation of assets, including a foreclosure of Financial's mortgage and a sale of the assets to Clark County Ventures, LLC, an affiliate of Norton Healthcare ("CCV"), was nearly complete when the involuntary petition was filed against the Debtor.

12.     On March 8, 2019, Financial obtained a $22,865,527.00 judgment foreclosing its mortgage on the Hospital real estate owned by KMCREI (the "Foreclosure Judgment").  On April 5, 2019, RL BB-IN KRE acquired substantially all of the Debtor's personal property in an Article 9 sale pursuant to a credit bid of $1,690,939.00 (the "Article 9 Sale").  These foreclosure actions cleared the way for RL BB-IN KRE and Financial to convey substantially all of the Hospital assets to CCV.

13.     On April 10, 2019, RL BB-IN KRE and Financial closed on the sale of the Hospital assets to CCV (the "CCV Sale") and received a total of $15 million.  Of this amount, for tax and accounting purposes, the parties allocated $3 million to the Debtor's assets that RL BB-IN KRE acquired at the Article 9 Sale and $11 million to the Foreclosure Judgment.  Following the closing of the CCV Sale, CCV acquired title to the Hospital from KMCREI pursuant to a sheriff's sale.

14.     RL BB-IN KRE asserts it is the primary secured creditor of the Debtor pursuant to certain secured loans made to the Debtor since 2013 in excess of $90 million.  Effective March 25, 2019, RL BB-IN KRE wrote down the balance of the alleged secured loans to $40 million.  On November 12, 2019, RL BB-IN KRE filed Proof of Claim No. 48 in this case, asserting a claim of $40,000,000.00 against the Debtor, secured in an unknown amount (the "RL BB-IN KRE POC").

4

15. Prior to entry of the Order for Relief, on May 8, 2019, Holdings received a transfer from the Debtor's bank account of $520,000.00 (the "Postpetition Transfer"). RL BB-IN KRE alleges that Holdings is an entity that serves as the centralized banking and treasury of its various subsidiaries and affiliates, which include RL BB-IN KRE, and that the Postpetition Transfer was a payment on its secured claim against the Debtor.

C. **Postpetition Financing and Demand on the Lennar Entities.**

16. In connection with the CCV Sale, CCV, RL BB-IN KRE and Financial, on behalf of themselves and certain of their subsidiaries, including the Debtor, entered into an agreement for transferring the Debtor's patient records to CCV. At the time of the filing of this case, the Debtor's patient records had not been transferred to CCV and it was determined that the Debtor's patient records should be disposed of in accordance with section 351 of the Bankruptcy Code. In order to pay the costs associated with the Trustee's compliance with section 351 of the Bankruptcy Code and other agreed upon fees, the Trustee and RL BB-IN KRE entered into an agreement for secured postpetition financing (the "Postpetition Financing"), which was approved by the Court on March 25, 2020 (the "Postpetition Financing Order") [Doc 131]. As of February 25, 2021, RL BB-IN KRE has advanced a total of $411,918.91 pursuant to the Postpetition Financing.

17. The Postpetition Financing is secured by a first priority lien on all assets of the Debtor's bankruptcy estate, including, without limitation, avoidance actions, subject to a certain carve out, and prior valid and properly perfected liens, if any; provided however, such liens do not extend to any claims and/or recoveries from RL BB-IN KRE or any subsidiaries and/or affiliates of RL BB-IN KRE (the "Secured Lien"). In addition, subject only to a certain carve out, the total amount of the Postpetition Financing constitutes an allowed senior administrative

expense with priority over any and all administrative expenses and all other claims against the Debtor's bankruptcy estate (the "Superpriority Admin Expense").

18. The Trustee previously made demand for recovery of certain avoidance actions under chapter 5 of the Bankruptcy Code and certain other causes of action against the Lennar Entities, including any and all affiliates and subsidiaries of the Lennar Entities (the "Trustee's Claims"). The Trustee's Claims include, but are not limited to, avoidance of the prepetition transfer of the Debtor's assets to RL BB-IN KRE pursuant to the Article 9 Sale and the subsequent sale of such assets to CCV, the avoidance of RL BB-IN KRE's alleged prepetition secured claim on any remaining assets of the Debtor whether collected or to be collected by the Trustee, and the Postpetition Transfer received by Holdings.

### III. SETTLEMENT

19. The Trustee and the Lennar Entities have engaged in settlement discussions regarding resolution of the Trustee's Claims, resulting in the proposed settlement terms embodied in the *Settlement Agreement and Mutual Release* (the "Settlement Agreement") attached and incorporated as **Exhibit 1**.

20. The pertinent terms of the Settlement Agreement are as follows:

(a) In full and final settlement of the Trustee's Claims, the Lennar Entities, on behalf of themselves and their subsidiaries and/or affiliated entities, will irrevocably waive any and all claims against the Debtor and/or its bankruptcy estate, including any claim or right to file a proof of claim, any right to receive any type of distribution from the Debtor's bankruptcy estate, and any other rights to funds currently held or to be collected by the Trustee; provided however, such waiver will not apply to the KMCREI POC. For the avoidance of doubt, this waiver includes (a) the right to any distribution with respect to the RL BB-IN KRE POC, and (b) all rights to payment, liens and claims relating to the Postpetition Financing approved in the Postpetition Financing Order.

(b) Within five (5) days of the effective date of the Settlement Agreement, RL BB-IN KRE shall withdraw the RL BB-IN KRE POC. The KMCREI POC

6

        shall be allowed as a general unsecured claim against the Debtor's bankruptcy estate in the amount of $17,482,250.90 and be treated as other allowed general unsecured claims.

    (c) The Settlement Agreement provides for global mutual releases by the parties.

## IV. RELIEF REQUESTED

21.    The Trustee requests entry of an order, substantially in the form attached as **Exhibit 2**, (a) approving the terms of the Settlement Agreement, (b) authorizing the Trustee to enter into the Settlement Agreement, and (c) directing that the Court shall retain exclusive jurisdiction as to the Settlement Agreement.

## V. GROUNDS FOR GRANTING RELIEF

22.    A court may authorize a trustee to enter into a settlement so long as it is a sound exercise of the trustee's business judgment.  *See* 11 U.S.C. § 363(b); *In re UAL Corp.*, 443 F.3d 565, 571 (7th Cir. 2006) (use under section 363 of the Bankruptcy Code must "[make] good business sense"); *In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991) (section 363 involves exercise of fiduciary duties and requires an "articulated business justification"); *see also In re Olde Prairie Block Owners, LLC*, 448 B.R. 482, 492 (Bankr. N.D. Ill. 2011) (same).  Moreover, when applying the "business judgment" standard to a use of estate property under section 363 of the Bankruptcy Code, a trustee's judgment is "entitled to great judicial deference as long as a sound business reason is given."  *See In re Efoora, Inc.*, 472 B.R. 481, 488 (Bankr. N.D. Ill. 2012).

23.    Similarly, Bankruptcy Rule 9019(a) permits a bankruptcy court to approve a trustee's "compromise or settlement" after notice and a hearing, if such settlement is "fair and equitable . . . and in the best interests of the bankruptcy estate."  *Depoister v. Mary M. Holloway Found.*, 36 F.3d 582, 586 (7th Cir. 1994); *see also In re Energy Co-op., Inc.*, 886 F.2d 921, 927

7

(7th Cir. 1989) ("The benchmark for determining the propriety of a bankruptcy settlement is whether the settlement is in the best interest of the estate."); *In re Smith*, No 02-16450-JKC-7A, 2008 Bankr. LEXIS 2821, \*6 (Bankr. S.D. Ind. Sept. 10, 2008) (same). Settlements should be approved unless "the settlement 'falls below the lowest point in the range of reasonableness.'" *In re Commercial Loan Corp.*, 316 B.R. 690, 698 (Bankr. N.D. Ill. 2004) (quoting *Energy Co-op.*, 886 F.2d at 929); *In re Doctors Hosp. of Hyde Park, Inc.*, 474 F.3d 421, 426 (7th Cir. 2007); *see also In re Artra Grp., Inc.*, 300 B.R. 699, 702 (Bankr. N.D. Ill. 2003). Settlements and compromises are favored in bankruptcy because they expedite case administration and reduce unnecessary administrative costs. *Fogel v. Zell*, 221 F.3d 955, 960 (7th Cir. 2000). In determining whether a compromise is in the best interests of the estate, the Court must compare "the settlement's terms with the litigation's probable costs and probable benefits." *In re Am. Reserve Corp.*, 841 F.2d 159, 161 (7th Cir. 1987); *see also Doctors Hosp.*, 474 F.3d at 426 ("Among the factors the court considers are the litigation's probability of success, complexity, expense, inconvenience, and delay, including the possibility that disapproving the settlement will cause wasting of assets." (internal quotation marks and citations omitted); *Commercial Loan*, 316 B.R. at 697 (holding that relevant factors a bankruptcy court should consider in approving a settlement include "the litigation's probability of success, its complexity, and its 'attendant expense, inconvenience and delay'" (quoting *Am. Reserve Corp.*, 841 F.2d at 161)).

24. The Trustee has determined the settlement terms based on the risk and expense to the Debtor's bankruptcy estate if the Trustee's Claim were litigated. In addition, the settlement results in release of any right to repayment pursuant to the Postpetition Financing resulting in the bankruptcy estate retaining approximately $411,918.91 in funds that it would otherwise be required to repay RL BB-IN KRE POC before distributions to any other creditors. Moreover,

8

the settlement results in the withdrawal of the RL BB-IN KRE POC in the amount of $40 million.  Based upon this consideration and the Trustee's business judgment, the Trustee respectfully submits that the proposed settlement terms are fair, equitable, in the best interest of the Debtor's bankruptcy estate and within the range of reasonableness for approval under Bankruptcy Rule 9019(a).

## VI.  NOTICE

25. A copy of this motion, along with the attached exhibits, will be sent to the following:  (a) the United States Trustee; (b) the Debtor's counsel; (c) counsel for the Lennar Entities; and (d) those parties who have requested notice pursuant to Bankruptcy Rule 2002.  The Trustee will file a separate objection notice for this motion.  In accordance with Bankruptcy Rule 2002(a)(3), Bankruptcy Rule 9019(a), S.D. Ind. B-9019-1(a) and S.D.Ind. B-2002-1(c), such notice will be provided to the United States Trustee, the Debtor's counsel, counsel for the Lennar Entities, those parties who have requested notice pursuant to Bankruptcy Rule 2002, and creditors who have filed claims.

**WHEREFORE**, the Trustee respectfully requests entry of an order, substantially in the form attached as **Exhibit 2**, granting the relief requested herein and granting the Trustee all other just and proper relief.

        Respectfully submitted,

        RUBIN & LEVIN, P.C.

Dated: May 12, 2021        */s/ Meredith R. Theisen*
                Meredith R. Theisen

        Deborah J. Caruso, Esq.
        Meredith R. Theisen, Esq.
        135 N. Pennsylvania Street, Suite 1400
        Indianapolis, IN 46204
        Telephone: (317) 634-0300
        Facsimile: (317) 453-8602
        Email: dcaruso@rubin-levin.net
                mtheisen@rubin-levin.net

        *Counsel for Kathryn L. Pry, Trustee*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on May 12, 2021 a copy of the foregoing *Trustee's Motion to Compromise and Settle Certain Claims Related to the Lennar Entities* was filed electronically. Notice of this filing will be sent to the following parties through the Court's Electronic Case Filing System. Parties may access this filing through the Court's system.

Wendy D Brewer    wbrewer@fmdlegal.com, cbellner@fmdlegal.com
Deborah Caruso    dcaruso@rubin-levin.net, dwright@rubin-levin.net;csprague@rubin-levin.net;atty_dcaruso@bluestylus.com
Jerry Avan Garau    jgarau@g-glawfirm.com
James R. Irving    james.irving@dentons.com, gina.young@dentons.com;jeanette.henson@dentons.com;smays@bgdlegal.com;jhenson@bgdlegal.com
Jackson Taylor Kirklin    taylor.kirklin@usdoj.gov, melanie.crouch@usdoj.gov
David R. Krebs    dkrebs@hbkfirm.com, dadams@hbkfirm.com
James P Moloy    jmoloy@boselaw.com, dlingenfelter@boselaw.com;mwakefield@boselaw.com
Ronald J. Moore    Ronald.Moore@usdoj.gov
Joseph L. Mulvey    joseph@mulveylawllc.com, linda@mulveylawllc.com
Lindsay N. Popejoy    lindsay@theclinelawfirm.com
Hans Poppe    hans@poppelawfirm.com
Kathryn L. Pry    kpry.trustee@gmail.com, IN36@ecfcbis.com
Daniel Tysen Smith    tysmith@forthepeople.com
William E Smith    wsmith@k-glaw.com, clipke@k-glaw.com
Meredith R. Theisen    mtheisen@rubin-levin.net, atty_mtheisen@bluestylus.com;mralph@rubin-levin.net;csprague@rubin-levin.net
U.S. Trustee    ustpregion10.in.ecf@usdoj.gov

April A Wimberg    april.wimberg@dentons.com, jhenson@bgdlegal.com;smays@bgdlegal.com

      I further certify that on May 12, 2021, a copy of the foregoing *Trustee's Motion to Compromise and Settle Certain Claims Related to the Lennar Entities* was mailed by first-class U.S. Mail, postage prepaid, or electronic mail as indicated and properly addressed to the following:

None.

                                              */s/ Meredith R. Theisen*
                                              Meredith R. Theisen

g:\wp80\trustee\pry\kentuckiana medical center llc - 86762701\drafts\lennar settlement motion.docx